UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELPHON CALHOUN,

       Plaintiff,

v.

       CASE NO. 5:08-CV-10051
       JUDGE JOHN CORBETT O'MEARA
       MAGISTRATE JUDGE PAUL KOMIVES

WILLIAM BOTOS, ROBERT HARVEY,
MILLICENT WARREN, PATRICIA
BARNHARDT, DONALD CRAWFORD,
JOHN DOE ##1-5, JANE DOE ##1-5,

       Defendants.
_____/

**REPORT AND RECOMMENDATION ON: (1) PLAINTIFF'S MOTION TO REINSTATE NAMED DEFENDANTS (docket #6); (2) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (docket #11); and (3) PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION TO COMPEL DISCOVERY (docket #15)**

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.   *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Plaintiff's Motion to Reinstate Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.   *Cross-Motions for Summary Judgment and Motion to Compel* . . . . . . . . . . . . . . . . . . . . . . . . 7
        1.   *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.   *Necessity of Further Discovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        3.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            a. Official Capacity Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            b. Claim Relating to the Strip Search Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            c. Manner of the Search . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
            d. Claims Against Defendant Harvey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    D.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should grant defendants' motion for summary judgment (docket #11), deny plaintiff's motion to reinstate named defendants (docket #6), and deny plaintiff's cross-motion for summary judgment and motion to compel (docket #15).

II.   REPORT:

A.     *Background*

Plaintiff Delphon Calhoun is a state prisoner in the custody of the Michigan Department of Corrections. On January 3, 2008, he commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution. At the times relevant to this action, plaintiff was incarcerated at the Thumb Correctional Facility (TCF) in Lapeer, Michigan. Named defendants are William Botos, a corrections officers at TCF; Captain Robert Harvey, a shift commander at TCF; Assistant Deputy Warden Donald Crawford; Deputy Warden Patricia Barnhardt; and Warden Millicent Warren.

Plaintiff alleges that, on December 28, 2006, defendant Botos conducted a "strip frisk" search of him following a contact visit he had with a person not incarcerated. He alleges that defendant Botos told him to place his index fingers in his anus and spread them out, and then instructed him to use his same fingers to spread his mouth open. *See* Compl., ¶¶ 10-16. When plaintiff complained to defendant Harvey, defendant Harvey threatened him. *See id*. at ¶¶ 17-19. Plaintiff's grievances challenging both defendant Botos's search and defendant Harvey's response were denied. *See id*. at 20-21. Plaintiff alleges that defendant Botos's actions reflect a pattern of behavior which was brought to the attention of defendant Warren prior to the incident involved in the complaint. *See id*. at ¶ 22. He alleges that defendants' actions caused him to suffer stress, which ultimately led to hypertension. *See id*. at ¶ 23. In Count I of his complaint, plaintiff alleges that defendant Botos's actions constituted cruel and unusual punishment in violation of the Eighth Amendment. In Count II, plaintiff alleges that defendant Botos's actions violated his right to be free from unreasonable search and seizure in violation of the Fourth Amendment. In Count III, plaintiff asserts that defendant Botos's actions violated his First Amendment right to association by placing

a chilling effect on his desire to have visitors. In Count IV, plaintiff contends that defendants Harvey and Crawford violated his constitutional rights by failing to properly supervise defendant Botos and correct his behavior. Finally, in Count V, plaintiff alleges that defendants Barnhardt and Warren violated his rights because they knew or should have known about defendant Botos's unconstitutional conduct.

On February 21, 2008, the Court entered an order of partial dismissal pursuant to 28 U.S.C. § 1915(e)(2). Specifically, the Court dismissed the claims against defendants Warren, Barnhardt, and Crawford, concluding that plaintiff's complaint alleged only *respondeat superior* liability based on their failure to supervise defendant Botos, and that such liability is not available under § 1983.

Currently pending before the Court are three motions. First, on March 3, 2008, plaintiff filed a motion to reinstate defendant's Warren, Barnhardt, and Crawford pending briefing on his theory of the case. Plaintiff argues that these defendants are liable as supervisors, and that discovery is necessary to show their role in the alleged deprivation of his constitutional rights. Defendants have not filed a response to this motion.

Second, on May 9, 2008, defendants filed a motion for summary judgment. Defendants contend that: (1) there is no genuine issue of material fact with respect to whether they violated plaintiff's First, Fourth, and Eighth Amendment rights; (2) defendant Harvey was not personally involved in the deprivation of plaintiff's rights; (3) they are entitled to qualified immunity; and (4) they are entitled to Eleventh Amendment immunity with respect to plaintiff's claims against them in their official capacities.

Third on June 9, 2008, plaintiff filed a combined cross-motion for summary judgment and motion to compel discovery, together with an opposition to defendant's motion for summary

judgment. Plaintiff contends that genuine issues of material fact remain, and that discovery is necessary to support his claims.

B.     *Plaintiff's Motion to Reinstate Defendants*

In his motion to reinstate defendant Warren, Barnhardt, and Crawford, plaintiff contends that these defendants are liable under a theory of supervisory liability because they denied his grievances and because there had been prior complaints about defendant Botos's conduct which they failed to correct. The Court should conclude that plaintiff is not entitled to have these defendants reinstated.

Because the Court has already determined that plaintiff's complaint fails to state a claim for relief against these defendants and entered an order dismissing them from the case, plaintiff's motion is in effect a motion for reconsideration of the Court's order. This Court's local rules provide: "Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). Here, plaintiff has failed to demonstrate that the Court's prior order dismissing these defendants was caused by a palpable defect.

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *See Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). Further, the Supreme Court has made clear that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. New*

4

*York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "[t]o recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting

*Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).  Finally, in order to succeed on his claim, it is not sufficient that the plaintiff merely show a violation of a constitutional right attributable to the failure to train or supervise.  In addition, the plaintiff must show that the failure to train or supervise in itself amounts to a deliberate indifference on the part of the supervisory officials.  *See, e.g.*, *City of Canton v. Harris*, 489 U.S. 378, 388 & n.8 (1989) (holding that inadequate training of police is actionable only where the failure to train amounts to "deliberate indifference" to the rights of persons with whom the police come in contact and further noting that "[t]he 'deliberate indifference standard we adopt for § 1983 'failure to train' claims does not turn upon the degree of fault (if any) that a plaintiff must show to make out an underlying claim of a constitutional violation.").

Here, the allegations of plaintiff's complaint, if taken as true, establish nothing more than that defendants Warren, Barnhardt, and Crawford failed to correct defendant Botos's actions.  Nothing in the complaint alleges, and no allegations of the complaint allow the inference, that these defendants themselves participated or acquiesced in the conduct of which plaintiff complains.  The prison officials's rejection of plaintiff's grievances, standing alone, does not amount to deliberate indifference or otherwise establish a constitutional violation.  The Constitution does not require a state to establish a prison grievance system, and thus the denial of, or failure to consider, a grievance does not state a constitutional claim under § 1983 or render the reviewing official personally involved in the deprivation alleged in the grievance.  *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants

whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts[]."); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").[1]  Finally, as explained below, defendant Botos is entitled to qualified immunity with respect to the underlying constitutional claims, and thus the supervisory defendants would likewise be entitled to qualified immunity.

Thus, the Court correctly determined that plaintiff had failed to state a claim against defendants Warren, Barnhardt, and Crawford, and the Court should accordingly deny his motion to reinstate these defendants.

C.     *Cross-Motions for Summary Judgment and Motion to Compel*

1.     *Legal Standard*

Under Rule 56, summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury

---

[1] Petitioner's reliance on *Verser v. Elyea*, 113 F. Supp. 2d 1211 (N.D. Ill. 2000), is misplaced.  In that case, the court found that a supervisor's concurrence in the denial of a grievance was sufficient to establish personal involvement.  That decision, however, was based on prior Seventh Circuit cases finding denial of a grievance to be sufficient.  *See id.* at 1215-16.  As explained above the Sixth Circuit, the decisions of which are binding on this Court, has taken a different view, holding that denial of a grievance alone is not sufficient to establish personal involvement.  In *Schribner v. Linthicum*, 232 Fed. Appx. 395 (5th cir. 2007) and *Turner v. Correction Medical Servs.,* 494 F. Supp. 2d 281 (D. Del. 2007), there was evidence presented that the supervisory official was responsible for a prison policy which itself was deliberately indifferent to plaintiff's constitutional rights.  As explained in connection with the parties' motions for summary judgment, the policy at issue here is not itself unconstitutional.

7

could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23;

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

    2.     *Necessity of Further Discovery*

Plaintiff, citing to Rule 56(f), contends that further discovery is necessary before summary judgment may be considered. That rule provides, in relevant part, that a court may deny a motion for summary judgment "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(f). As another court in this Circuit has explained:

> When a party opposing a motion for summary judgment believes that further discovery is needed to develop the issues addressed in the motion, that party must file an affidavit pursuant to Fed.R.Civ.P. 56(f) ("R.56(f)"), to "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000). Rule 56(f) provides as follows:
>> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
>
> Rule 56(f) is the means by which a party resisting a motion for summary judgment fulfills the "obligation to inform the district court of his need for discovery . . . ." *Cacevic*, 226 F.3d at 488 (quoting *Vance ex rel. Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996)). The party seeking additional discovery must "affirmatively demonstrate . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Good v. Ohio Edison Co.*, 149 F.3d 413, 422 (6th Cir.1998) (internal quotation marks omitted).
>
> The filing of a Rule 56(f) affidavit is no mere formality:
>> We, like other reviewing courts, place great weight on the Rule 56(f) affidavit, believing that "[a] party may not simply assert

> in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." The Second Circuit Court of Appeals has similarly explained that "[a] reference to Rule 56(f) and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit . . . and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate."
>
> *Cacevic*, 226 F.3d at 488 (quoting *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996)) (citations omitted) (alterations in original). "Where a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." *Id*.

*Gencorp, Inc. v. AIU Ins. Co.*, 304 F. Supp. 2d 955, 960 (N.D. Ohio 2004); *see also*, *Gettings v. Building Laborers Local 310 Fringe Benefit Fund*, 349 F.3d 300, 305 (6th Cir. 2003); *Cacevic*, 226 F.3d at 488; *Evans*, 80 F.3d at 961. Thus "a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." *Evans*, 80 F.3d at 961 (internal quotation omitted); *see also*, *Whalen v. Century Communications*, No. 97-16572, 1999 WL 109630, at *1 (9th Cir. Dec. 10, 1998) ("An inadequate discovery time argument fails where the party complaining failed to take advantage of the procedural remedy offered in Rule 56(f).").

In his affidavit, and in his previously served discovery requests, plaintiff seeks documents relating to prisoner grievances filed against defendants Botos and Harvey, their employment histories, and prior lawsuits filed against them. All of these documents relate solely to the level of knowledge to be attributed to the previously dismissed defendants. That is, none of the documents sought relate to the claims still remaining in this case against defendant Botos and Harvey, or to the

actions of defendant Botos upon which this suit is based. Thus, petitioner's Rule 56(f) affidavit does not detail any further information which is necessary before the Court can rule on the summary judgment motions with respect to the claims which still remain in this case. Accordingly, the Court should conclude that there is no further need for discovery, and that the motions for summary judgment may be adjudicated on the basis of the existing record.

    3.    *Analysis*

*a. Official Capacity Claims*

At the outset, to the extent plaintiff's claims are against defendants in their official capacities defendants are immune from suit. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion). Further, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Eleventh Amendment bars suits against state officials sued in their official capacity. *See id.* at 71; *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000). Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claims against them in their official capacities.[2]

---

[2] Plaintiff's claims against defendants in their individual capacities are not barred by the Eleventh Amendment, even though those claims are based on "official" actions taken by defendants. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991).

11

*b. Claim Relating to the Strip Search Policy*

It cannot be disputed that defendant Botos's decision to conduct the strip search of plaintiff and the scope of that search–as opposed to the manner in which the search was carried out–was in accordance with prison policy. MDOC Policy Directive provides that "[a] prisoner may be subjected to a strip search whenever it is determined by staff that such a search is necessary," and more particularly that "all prisoners shall be subject to a strip search . . . after each contact visit." MDOC POLICY DIRECTIVE 04.04.110(S). It is undisputed here that the strip search of plaintiff occurred after a contact visit, and thus was required by PD 04.04.110(S). Further, the Policy Directive defines a

"strip search" as a "[v]isual inspection of all body surfaces of a person who has been required to remove all or most of his/her clothing and jewelry for purposes of the search; includes visual inspection of the mouth, ears, nasal cavities, and the entrance to the vagina and rectal cavity. The person will be required to bend and spread his/her buttocks . . . to allow inspection." PD 04.04.110(G)(3). Again, even under plaintiff's allegations, defendant Botos did not exceed the scope of the strip search as defined in PD 04.04.110(G)(3), requiring only that plaintiff spread his mouth and buttocks for inspection. Thus, apart from plaintiff's allegation that defendant Botos required him to first place his hands in his anus before placing them in his mouth (which is discussed below), the question is whether the policy itself violates plaintiff's First, Fourth, or Eighth Amendment rights. The Court should conclude that the policy does not violate these rights.

> While inmates do not lose all constitutional rights by virtue of their incarceration,
>
> lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives--including

>    deterrence of crime, rehabilitation of prisoners, and institutional security.
>         In considering the appropriate balance of these factors, we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination. To ensure that courts afford appropriate deference to prison officials, we have determined that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. We recently restated the proper standard: When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. This approach ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration, and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree.

*O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987) (internal citations, quotations, and alterations omitted) (footnote omitted) (applying the general reasonable relationship test of *Turner v. Safley*, 482 U.S. 78 (1987) to free exercise claims). Under the *Turner/O'Lone* analysis, the Court must consider four factors: (1) whether there is a valid, rational connection between the challenged regulation or action and legitimate penological objectives; (2) whether alternative means for exercising the right remain open; (3) whether accommodation of the asserted right will have undue impact on the guards, other prisoners, and prison resources generally; and (4) whether an alternative to accommodation exists which fully accommodates the prisoner's rights at *de minimis* costs to valid penological interests. *See Turner*, 482 U.S. at 90; *Whitney v. Brown*, 882 F.2d 1068, 1072 (6th Cir. 1989); *Pollack v. Marshall*, 845 F.2d 656, 658 (6th Cir. 1988).

The courts, including both the Sixth Circuit and Supreme Court, have explicitly upheld the reasonableness of strip searches, including visual inspection of body cavities, following contact visits under this test. *See Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979); *Mowatt v. Visser*, No. 93-1539, 1993 WL 503773, at *3 (6th Cir. Dec. 8, 1993); *Collins v. Knox County*, 569 F. Supp. 2d 269,

283 (D. Me. 2008) (citing cases); *Zunker v. Bertrand*, 798 F. Supp. 1365, 1369 (E.D. Wis. 1992) (citing cases). Accordingly, neither the fact nor scope of the strip search violated petitioner's rights under the First, Fourth, or Eighth Amendments. Thus, the only question is whether the manner in which the search was conducted violated plaintiff's Eighth Amendment rights.

*c. Manner of the Search*

Plaintiff contends that defendant Botos required him to first place his fingers in his anus, and then place them in his mouth, and that this manner of conducting the strip search violated his Eighth Amendment rights. Defendant Botos denies that he required plaintiff to do this, averring that he first instructed plaintiff to spread his mouth open, and only after that instructed plaintiff to spread his buttocks. Plaintiff's complaint is accompanied by an affidavit swearing that the allegations of the complaint are true. Because the Court may not resolve credibility contests in deciding a motion for summary judgment, the Court must accept as true plaintiff's description of the search. Thus, the question before the Court is whether Botos's actions, as alleged by plaintiff, establish a constitutional violation.

There does not appear to be, and plaintiff has cited, no case law directly on point. However, the Court need not decide whether plaintiff's allegations are sufficient to establish a constitutional violation under either the Fourth or Eighth Amendment because, even if they do, defendant Botos is entitled to qualified immunity. As a general matter, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose behind qualified immunity is to protect public officials "from undue interference with their duties and from

14

potentially disabling threats of liability." *Id*. at 806.  In determining whether an official is entitled to qualified immunity, a court asks "whether the violation involved a clearly established rights of which a reasonable official would have known" such that the official's conduct "was objectively unreasonable in light of the clearly established constitutional right." *Feathers v. Ahey*, 319 F.3d 843, 848 (6th Cir. 2003); *see also*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996).  In determining whether a right is clearly established, a court looks first to the decisions of the Supreme Court, then to those of the Sixth Circuit, and finally to decisions of other courts.  *See Dickerson*, 101 F.3d at 1157.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202.  It is not enough for a general right–such as the right to adequate medical care–be established; the right must be established "in a more particularized . . . sense" relevant to the defendant's acts or omissions. *Id*.  At the same time, the precise conduct at issue need not previously have been held unlawful, and conduct can violate clearly established law "even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).  "[I]n an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).  Under *Brosseau*, as the Sixth Circuit has recently explained, a plaintiff may show that a defendant violated clearly established law by show either that: (1) the violation was obvious under the general constitutional standards governing the asserted right; or (2) the defendant's conduct failed to adhere to a particularized body of precedent that governs the case.  *See Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (discussing *Brosseau*, 543 U.S. at 199-200).

Importantly, "the question is not whether reasonable government actors would know that the

15

alleged behavior was wrong, unethical, or illegal under state or federal statutes, but whether they would believe it to be *unconstitutional*." *Williams v. Department of Veteran Affairs*, 879 F. Supp. 578, 584 (E.D. Va. 1995) (emphasis in original). Under these standards, defendant Botos's alleged conduct did not violate clearly established law such that a reasonable official in Botos's position would have known that the conduct was unconstitutional. Although there is a large body of caselaw discussing the constitutionality of prison strip searches in general, there is little caselaw discussing the manner and appropriate scope of such a search. And there appears to be no caselaw at all suggesting that conduct of the type allegedly engaged in by defendant Botos violates the Fourth or Eighth Amendment. On the contrary, the only two cases I have been able to locate with somewhat similar facts suggest that, regardless of how reprehensible, conduct of the type allegedly engaged in by defendant Botos does *not* violate the Constitution. *See Brown v. Blaine*, 185 Fed. Appx. 166, 170 (3d Cir. 2006) (no constitutional violation where prisoner was required to place his hands in his mouth after spreading his buttocks and manipulating his genitalia); *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (no constitutional violation where prisoner was required to rub his fingers along his gums after manipulating his genitalia).

    In short, plaintiff has failed to cite, I have been unable to locate, "any law that would have made it readily apparent to reasonable officers in [defendant Botos's] position that [his] conduct was unconstitutional." *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997). Even if reprehensible, the caselaw does not establish that defendant Botos's alleged conduct was clearly unconstitutional. "[E]very official abuse of power, even if unreasonable, unjustified, or outrageous, does not rise to the level of a federal constitutional deprivation. Some such conduct may simply violate state tort law or indeed may be perfectly legal, though unseemly and reprehensible." *Kernats*

16

*v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994). Because no clearly established law makes it apparent that defendant Botos's alleged conduct crossed the line separating tortious or reprehensible conduct from unconstitutional conduct, the Court should conclude that defendant Botos is entitled to qualified immunity.[3]

### d. Claims Against Defendant Harvey

With respect to plaintiff's claims against defendant Harvey, it appears that plaintiff's claims are based on Harvey's failure to properly supervise defendant Botos in the conduct of the search. To the extent that plaintiff's claims are derivative of his claims against defendant Botos, defendant Harvey is likewise entitled to qualified immunity.

To the extent that plaintiff is claiming that defendant Harvey violated his constitutional rights by threatening him with a body cavity search or placement in segregation, plaintiff's allegations fail to state a claim. It is well-established that threats and harassment by prison officials against inmates do not rise to the level of a constitutional violation unless they are so extreme as to constitute cruel and unusual punishment. *See, e.g.*, *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992); *Thomas v. Hill*, 963 F. Supp. 753, 755 (N.D. Ind. 1997) (citing cases). Defendant Harvey's alleged single, isolated threat, which was never carried out, is insufficient to establish a constitutional violation. Accordingly, the Court

---

[3]In *Saucier v. Katz, supra*, the Court established a mandatory two-step inquiry for qualified immunity claims. Under the *Saucier* framework, a court is required to first determine whether the facts alleged or shown by the plaintiff make out a constitutional violation. Only after a court does so may the court then consider whether the constitutional right was clearly established. *See Saucier*, 533 U.S. at 201. Recently, the Court has overruled this aspect of *Saucier*, holding that while the two step approach is still useful, a court is not required to follow that approach and may proceed directly to the clearly established prong of the test without first resolving whether the plaintiff's allegations sufficiently allege a constitutional violation at all. *See Pearson v. Callahan*, ___ U.S. ___, ___, No. 07-751, slip op. at 10 (Jan. 21, 2009).

should conclude that defendant Harvey is entitled to summary judgment.

D.     *Conclusion*

In view of the foregoing, the Court should grant defendants' motion for summary judgment, deny plaintiff's motion to reinstate named defendants, and deny plaintiff's consolidated cross-motion for summary judgment and motion to compel.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 2/4/09

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on February 4, 2009.

s/Eddrey Butts  
Case Manager